## WEST and Another *v.* BRADLEY and Others.

Action upon a written agreement, whereby the defendants agreed to sell to the plaintiffs their entire crop of corn, at 40 cents per bushel, to be measured by the two-foot gauge, at the rate of two cubic feet per bushel; which measurement was to be final, whether the same should exceed or fall short of the statute weight. The complaint stated, that prior to the date of the agreement, the defendants, with intent to defraud any person who might purchase the corn, had placed large quantities of rails and other substances amongst it, so as not only to conceal the same, but to form large cavities, and increase the apparent bulk of the corn; that while the corn was in this condition it was gauged to the plaintiffs and received by them, in ignorance of the fraud, &c., at, &c., (stating the number of bushels and the excess thereof over the real quantity). Issues of fact, &c., trial by jury, and verdict and judgment for the plaintiffs. The evidence was not set out in the record. The Court instructed the jury, that if, on account of the fraud of the defendants, the quantities of foreign substances placed among the corn, and the plaintiffs' loss, could not be precisely ascertained, the jury might regard the difference between the gauged measure and the weights, and all other facts in evidence bearing upon the question of amount, &c.

*Held*, that the instructions must be presumed to have been applicable to the evidence.

*Held*, also, that the instructions were correct.

APPEAL from the *Dearborn* Circuit Court.

DAVISON, J.—The appellees, who were plaintiffs below, sued *Warren* and *Stephen West* upon a written agreement entered into between the parties, dated *December* 10, 1852, whereby the defendants agreed to sell to the plaintiffs their entire crop of corn raised that year, at 40 cents per bushel, to be measured by the two foot gauge, which is at the rate of two cubic feet for a bushel. It was agreed that this mode of measurement was to be final, without any regard to whether the same exceeded or fell short of the statute

weight. The corn was to be gauged within eight days from the date of the contract, and to be paid for on delivery.

The complaint is, that prior to the date of the agreement, the defendants, with intent to defraud whomsoever might purchase the corn, had placed large quantities of rails and other substances amongst it, in such a manner as not only to conceal the same, but so as to form vast cavities therein, and thereby increase its apparent bulk; that while the corn was in this condition, it was gauged to the plaintiffs and received by them as fourteen thousand five hundred and fifty bushels; that believing that measurement to indicate the exact quantity of corn in the defendants' cribs, they paid them for the above number of bushels, when, in truth, the plaintiffs received eleven thousand and two bushels and no more; and that this difference in the quantity, which, it will be seen, was three thousand five hundred and forty-eight bushels, was produced by the fraudulent conduct of the defendants, in placing rails, &c., amongst the corn, as before stated.

Issues of fact were submitted to a jury, who returned a verdict for the plaintiffs, upon which the Court rendered a judgment.

The Court, in its charge, told the jury, that "if the defendants fraudulently placed rails or other substances in the corn, the amount of which substances is uncertain, they can not take advantage of that uncertainty in proof." "If the defendants have been guilty of fraud, they must bear the loss of such uncertainty." "And if, in consequence of their fraudulent acts, the quantities of foreign substances and the plaintiffs' loss can not be precisely ascertained, the jury need not be nice and close in their calculations, but may look at the difference between the gauged measure and the weights, and all other facts proven bearing upon the question of amount, in order to ascertain the extent of the fraud practised on the plaintiffs; and the fraud being proved, the defendants must bear the loss of the uncertainty, if any exists, in the mode of arriving at the extent of the deception."

May Term,<br>1855.<br><br>WEST<br>v.<br>BRADLEY.

These instructions are said to be erroneous, 1. Because they allow the jury the right to look at the weights to ascertain the extent of the fraud; and 2. Because the jury are told, " that if fraud was practised, the plaintiffs' damages should be estimated at the highest rate." The latter position assumes ground not taken by the Court in its charge. The jury were not told to estimate damages at the highest rate. That point will not, therefore, be further noticed.

As the evidence is not upon the record, we must presume that it was sufficient to authorize the instructions; and in favor of the ruling of the Court it will be intended that the testimony adduced on the trial proved an exact correspondence in quantity between a bushel of corn in weight, as prescribed by the statute, and one ascertained by the " two-foot gauge." It is true, the contract stipulates that the number of bushels sold should be indicated by gauge, and not by weight, but that provision relates to a *bona fide* performance of the agreement. It can not be allowed to control any proper mode of eviscerating fraud, or estimating the extent of any damage that may result from it. If the defendants intentionally placed rails or other substances in their cribs, with a view of producing an overestimate of the quantity of corn, it is too clear to require comment, that the jury, in estimating the extent of the fraud, had a right to look at the weight of the corn actually received by the plaintiffs, as well as all other evidence in the cause tending to elucidate the transaction and prove the amount of damages really sustained by the deceitful conduct of the defendants.

*Per Curiam.*—The judgment is affirmed, with 5 per cent. damages and costs.

*J. Ryman* and *P. L. Spooner*, for the appellants.

*E. Dumont, D. S. Major, O. B. Torbet* and *A. Brower,* for the appellees.